UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINE GEE,

Plaintiff,

v.

THE CITY OF NEW YORK, and JOHN DOE 1-5,

Defendants.

Case No.: 24-1300

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Antoine Gee by and through his attorneys, Danny Grace PLLC, as and for their Complaint in this action against The City of New York ("City") and John Doe 1-5, allege upon personal knowledge and upon information and belief as to the matters as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages to redress violations of the Plaintiff's rights under the Constitution of the United States, the Constitution of the State of New York, and the laws of the State of New York.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 for violations of the Plaintiff's rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States, the common laws of the State of New York, and the Constitution of the State of New York.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

4. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5. An award of costs and attorney's fees is authorized pursuant to 42 U.S.C. §1988.

6. Venue is proper in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §1391, because the acts and omissions described herein occurred in the jurisdiction of the Southern District of the State of New York.

7. Any and all other prerequisites to the filing of this suit have been met.

**PRELIMINARY STATEMENT**

8. In 2014, the then Mayor, Bill de Blasio, hosted a media roundtable on reform at Rikers Island Correctional Facilities ("Rikers"). The Mayor acknowledged that Rikers was an "institution that deeply needs a culture change – and the leadership, the investment, all the other pieces necessary to create change[1]." The Mayor went on to say that "Let's face it – for many years, Rikers Island has been a dehumanizing environment – an environment unfair to the people who work there, unfair to the inmates. It created a dynamic of conflict and violence that became pervasive. The violence against correction officers, the violence against healthcare workers, the violence among inmates, the violence against inmates – all of these became entirely too common and were tolerated, and became dynamics that, to some, were intractable, were impossible to change. We have never had that view in this administration. We believe change is possible, change is necessary – and we've put a series of steps in place to achieve that change and we won't stop until the change is not only achieved but is deep-seated."

[1] https://www1.nyc.gov/office-of-the-mayor/news/932-14/transcript-mayor-de-blasio-hosts-media-roundtable-reform-rikers-island-correctional

9. While Mayor de Blasio finally acknowledged the barbaric and intractable conditions at Rikers in 2014, in 2021, the New York Times found that there had in fact been decades of violence, mismanagement, and dysfunction at Rikers. [2]

10. Fast forward to 2022, and the situation at Rikers has only worsened. The conditions at Rikers are so notorious, so horrifying, so well-published, that on October 17, 2022, a march to Gracie Mansion was held to urge Mayor Adams to close Rikers once and for all. [3]

11. In short, Rikers is an institution that has careened entirely out of control: woefully mismanaged, unrelentingly violent, perpetrated by both inmates and correction officers, rampant absenteeism of correction officers, what amounts to a policy of understaffing, all resulting in violation after violation of its detainees' constitutional rights. [4]

**PARTIES**

12. The Plaintiff Antoine Gee is a 31-year-old man. Plaintiff was held in the Eric M. Taylor Center ("EMTC") Intake Cell at 10-10 Hazen Street, East Elmhurst, New York 11370, on Rikers Island, from April 1, 2022, to April 6, 2022.

13. Defendant the City of New York is a municipal entity created and authorized under the laws of the State of New York. The City of New York is authorized by law to maintain a municipal jail system. The New York City Department of Correction ("DOC") is an agency of the City of New York and operates and maintains Rikers Island Correctional Facility. Defendant the City of New York assumes the risks incidental to the operation and maintenance of Rikers Island and the employment of its staff and Correction Officers.

---

[2] https://www.nytimes.com/2021/12/31/nyregion/rikers-island-correction-officers.html
[3] https://abc7ny.com/rikers-island-protest-mayor-adams/12340509/
[4] https://www.nytimes.com/2021/12/31/nyregion/rikers-island-correction-officers.html

14. Defendants John Doe 1-5 are Correctional Officers who were employed at Rikers Island Correctional Facility at the time of the events at issue in this lawsuit.

## FACTUAL ALLEGATIONS

15. Plaintiff is a 31-yeaer old disabled man who had his right leg amputated as a result of a motor vehicle accident.

16. Plaintiff was fitted with a battery-powered prosthetic leg which contains a computer chip and must have its battery charged on a daily basis.

17. The battery in Plaintiff's prosthetic leg would only remain charged for 48 hours before it would die and render the prosthetic leg inoperative.

18. Further, Plaintiff is required to take daily medication, including Amlodipine, for hypertension, Gabapentin, for neuropathic pain, and Oxycodone, for muscular/skeletal pain, as the result of the automobile accident.

19. In the absence of this medication, Plaintiff becomes irate, and experiences anxiety, paranoia, and schizophrenia.

20. Plaintiff was detained in an Intake Cell at the Eric M. Taylor Center (E.M.T.C.) at Rikers Island Correctional Facility, 10-10 Hazen Street, East Elmhurst, New York 11370 from April 1, 2022to April 6, 2022.

21. Defendants were aware of Plaintiff's prosthetic leg and the need to recharge the battery when he was placed in the Intake Cell of E.M.T.C.

22. Defendants were aware of Plaintiff's need to take his required medications when he was placed in the Intake Cell of E.M.T.C.

23. Plaintiff endured horrific conditions while held in Intake, spending the five days in a 12' by 12' cell, with a single bench and toilet, and a water bucket with one cup to be shared by

all of the inmates. During the course of these five days, between 35 to 60 people were placed in the cell, far in excess of the cell's capacity.

24. The inmates, including Plaintiff, were forced to stand for the entirety of the day and to sleep on the floor at night.

25. While held in intake, Plaintiff was unable to charge the battery in his prosthetic leg which resulted in the battery dying and which rendered the prosthetic leg inoperative.

26. As a result of his prosthetic leg being inoperative at the time he arrived at E.M.T.C., Plaintiff was practically immobile.

27. Plaintiff's prosthetic leg's battery was not charged during his entire time at E.M.T.C.

28. During the five days he was held in Intake, Defendants deprived Plaintiff of all his required medications which resulted in Plaintiff becoming irate and which caused him to experience anxiety, paranoia, and schizophrenic episodes.

29. As a result of the injuries sustained in the motor vehicle accident, Plaintiff suffered from a compromised immune system.

30. During the five days he was held in Intake, Plaintiff was exposed to multiple cellmates who were infected with COVID-19.

31. During his time in the E.M.T.C. Intake, Plaintiff witnessed multiple fights between inmates in adjacent cells.

32. Plaintiff also witnessed inmates attempt suicide by using sheets to hang themselves.

33. During the five days in Intake, the toilet in the cell began to overflow which resulted in the cell floor being covered in feces and urine.

34. During the five days in Intake, an inmate began urinating and defecating directly on the cell floor instead of in the overflowing toilet.

35. On the night of April 5, 2022, and as the result of the deprivation of his prescribed medications, Plaintiff began to experience psychotic manifestations, including extreme paranoia, anxiety and delusional thoughts.

36. Plaintiff experienced a psychological breakdown and began to scream.

37. Correction Officers entered the cell and directed Plaintiff to get on his knees.

38. The Correction Officers handcuffed Plaintiff's hands in front of him.

39. The Correction Officers then pushed Plaintiff to the ground and placed multiple knees on his back while he lay face down on the cell floor.

40. Plaintiff began to experience trouble breathing and complained that he could not breathe as the pressure increased.

41. Further, he was punched in the face four or five times and kicked multiple times in the torso area.

42. While on the floor, the officers pulled Plaintiff's pants and underwear down to his knees.

43. An officer then grabbed Plaintiff's genitals and buttocks.

44. The officers spread Plaintiff's buttocks and said, "I got him," and "you got him."

45. One of the officers inserted a finger into Plaintiff's rectum three or four times and laughed.

46. The officers were not wearing gloves.

47. Plaintiff had been in the Intake Cell for five days and was not in the possession of any weapons or contraband.

48. Plaintiff lay on the floor for seven to thirteen minutes.

49. Plaintiff's prosthetic leg was damaged during the course of the assault.

50. A response team entered the cell and uncuffed the Plaintiff.

51. Blood was running down his legs.

52. Plaintiff was then put on a gurney and slammed into a wall.

53. While on the gurney, Plaintiff lost consciousness.

54. As a result, Plaintiff suffered a cut over his right eye, and received four stitches at Bellevue Hospital.

55. Plaintiff's complaints of sexual assault were examined by a physician at Bellevue who documented 'sexual assault,' and who found defensive wounds, including scratches on Plaintiff's wrists from the handcuffs, and abrasions and lacerations on Plaintiff's ankles from the shackles.

56. As set forth in the preceding paragraphs, Plaintiff was forced to endure unspeakable conditions for the duration of his time in the Intake Cell in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, the Constitution of the State of New York, and the laws of the State of New York.

57. Rikers has a long and well-documented history and a de facto policy of insufficient staffing, the result of which is a virtual chaos, where detainees are subjected to violence and other risks and horrors, deprived of basic human needs, and suffer inhumane living conditions. [5]

58. Further, the detainees are incarcerated in facilities that are decrepit, unsanitary, and hazardous, plagued with vermin, and that feature antiquated and inoperative plumbing.[6]

---

[5] See https://www.nydailynews.com/new-york/nyc-crime/ny-rikers-board-of-correction-suicides-20210901-yfj4tzgonzebnecwtitdwinc3e-story.html

[6] See https://www.courthousenews.com/at-pivotal-time-for-rikers-experts-say-federal-control-is-best-path-forward-%EF%BF%BC/

59. Rikers has a long and documented history of overcrowding, mismanagement, poor leadership, incompetent supervisory staff, unqualified and unfit Correction Officers, inadequate medical care, and the use of excessive force by its Correction Officers. [7]

60. The City of New York has been aware of the conditions set forth above since at least 2014.[8]

**FIRST CAUSE OF ACTION**
**(42 U.S.C. §1983 – Monell Liability – The City of New York )**

61. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

62. The City of New York has been aware of the deplorable and dangerous conditions at Rikers as set forth in this Complaint since at least 2014 and has done nothing to ameliorate the situation.

63. Such conditions include extreme overcrowding, insufficient, under-trained and unqualified staff, and crumbling, unsafe infrastructure.

64. Employees of the City of New York and the Department of Corrections created and allowed to continue horrifying conditions that endangered the health and safety of detainees and deprived them of basic human necessities.

65. Rikers has a long and documented history of unqualified and unfit Correction Officers, inadequate medical care, and the use of excessive force by its Correction Officers. [9]

66. Defendant City of New York by implementing and continuing to enforce and/or effectuate policies, practices and/or customs pursuant to which Plaintiff was body cavity searched

---

[7] See https://nypost.com/2021/10/21/photos-inside-rikers-island-expose-hellish-deadly-conditions/
[8] https://www1.nyc.gov/office-of-the-mayor/news/932-14/transcript-mayor-de-blasio-hosts-media-roundtable-reform-rikers-island-correctional
[9] See https://nypost.com/2021/10/21/photos-inside-rikers-island-expose-hellish-deadly-conditions/

absent the requisite particularized reasonable suspicion and/or probable cause, and where Plaintiff was punched and kicked by Corrections Officers, was deprived of necessary medication, and was denied the opportunity to recharge his prosthetic leg, deprived Plaintiff of the rights afforded him by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

## SECOND CAUSE OF ACTION
## (Violation of Plaintiff's Rights Under the Constitution of the State of New York and Tort)

67. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

68. The City of New York has been aware of the deplorable and dangerous conditions at Rikers as set forth in this Complaint since at least 2014 and has done nothing to ameliorate the situation.

69. Such conditions include extreme overcrowding, insufficient, under-trained and unqualified staff, and crumbling, unsafe infrastructure.

70. Employees of the City of New York and the Department of Corrections created and allowed to continue horrifying conditions that endangered the health and safety of detainees and deprived them of basic human necessities.

71. Rikers has a long and documented history of unqualified and unfit Correction Officers, inadequate medical care, and the use of excessive force by its Correction Officers. [10]

72. Defendant City of New York by implementing and continuing to enforce and/or effectuate policies, practices and/or customs pursuant to which Plaintiff was body cavity searched without the requisite particularized reasonable suspicion and/or probable cause, and where

[10] See https://nypost.com/2021/10/21/photos-inside-rikers-island-expose-hellish-deadly-conditions/

Plaintiff was punched and kicked by Corrections Officers, was deprived of necessary prescription medication, and was denied the opportunity to recharge his prosthetic leg, deprived Plaintiff of the rights afforded him under the Constitution of the State of New York.

**THIRD CAUSE OF ACTION**
**(Negligence)**

73. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

74. As custodian of Plaintiff, Defendant had a duty of care to Plaintiff to provide a safe and sanitary environment in which to be detained.

75. Defendants' actions and inaction were the direct and proximate cause of Plaintiff's injuries, as the result of which, Defendant is liable to Plaintiff.

**FOURTH CAUSE OF ACTION**
**(Sexual Battery)**

76. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

77. On April 5, 2023, the John Doe Defendants engaged in unpermitted and harmful bodily sexual contact upon the person of Plaintiff.

78. John Doe Defendants engaged in an unlawful cavity search of the Plaintiff without the requisite particularized reasonable suspicion and/or probable cause to justify the search.

79. Plaintiff did not consent to the harmful bodily contact.

80. As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

**FIFTH CAUSE OF ACTION**
**(Damage of Personal Property)**

81. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

82. On April 5, 2023, during the course of the John Doe Defendants' battery of Plaintiff, Plaintiff's prosthetic leg was damaged, rendering it unfit to wear.

83. As a result of Defendants' actions, Plaintiff was forced to obtain an immediate change of the leg's socket upon his release from Rikers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray that the Court enter judgment in their favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct, and practices of Defendant complained of herein violate the Constitution of the United States, the Constitution of the State of New York, and the laws of the State of New York;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries;

C. An award of compensatory and punitive damages, in an amount to be determined at trial;

D. An award of costs that Plaintiff have incurred in this action, as well as Plaintiff's reasonable attorney's fees and costs to the fullest extent permitted by laws; and

E. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demand a trial by jury as to all issues so triable.

Dated: February 21, 2024
New York, New York

Respectfully submitted,

DANNY GRACE PLLC
*ATTORNEYS FOR PLAINTIFF*

225 BROADWAY, SUITE 1200
NEW YORK, NY 10007
(516)748-9848

________/S/_________________________
DANIEL GRACE, ESQ.
DOUGLAS MACE, ESQ.

ESTRIN & BENN LLC
*OF -COUNSEL*

225 BROADWAY, SUITE 1200
NEW YORK, NY 10007
(212) 962-0800

________/S/_________________________
MELVIN ESTRIN, ESQ.
PATRICK BENN, ESQ.