USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/8/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
x

ANTOINE GEE,

Plaintiff,

-against-

THE CITY OF NEW YORK, and JOHN DOE 1-5,

Defendants.
x

24-cv-1300 (CM)

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Antoine Gee brings this action against the City of New York and five unnamed corrections officers arising out of his detention at the Eric M. Taylor Center ("EMTC") on Rikers Island in April 2022. The amended complaint asserts five causes of action: (1) a federal municipal-liability claim against the City under 42 U.S.C. § 1983; (2) a claim styled as a violation of the New York State Constitution and tort law; (3) negligence; (4) sexual battery; and (5) damage to personal property. Dkt. No. 10, ¶¶ 60–82. The John Doe defendants have never been identified or served.

Defendants move for summary judgment. The motion is GRANTED. Plaintiff's federal claim against the City fails because Plaintiff has adduced no evidence from which a reasonable jury could find that any municipal policy, custom, or practice caused the constitutional violations alleged in the complaint. Plaintiff's state-law claims are barred because he admittedly failed to appear for any of the four scheduled examinations that were demanded pursuant to General Municipal Law § 50-h. Recent amendments to CPLR § 208-a and General Municipal Law § 50-i(6) do not excuse that failure or otherwise alter the result. Finally, all claims against the John Doe

defendants are dismissed because Plaintiff never identified or served them, discovery is closed, and any effort to amend to substitute named defendants would be futile.

## I. BACKGROUND

The following facts are drawn from the amended complaint, the parties' Local Rule 56.1 statements, and the admissible record materials submitted in connection with the motion. The facts are undisputed unless otherwise noted.

Plaintiff is a disabled man whose right leg was amputated after a motor-vehicle accident. Dkt. No. 10, ¶ 14. He uses a battery-powered prosthetic leg that contains a computer chip, which must be charged daily. *Id.*, ¶¶ 15–16. Plaintiff alleges that he requires daily medication to deal with his condition, including Amlodipine, Gabapentin, and Oxycodone. *Id.*, ¶ 17.

According to the complaint, Plaintiff was detained in an intake cell at EMTC on Rikers Island from April 1, 2022 to April 6, 2022. *Id.*, ¶ 19. Plaintiff alleges that, while in intake, he was housed in a 12-by-12-foot cell with many other detainees, deprived of his required medications, denied the ability to charge his prosthetic leg, exposed to unsanitary conditions, and forced to sleep on the floor. Dkt. No. 10, ¶¶ 22–33. He alleges that the toilet overflowed and that the floor was covered in feces and urine. *Id.*, ¶¶ 32–33.

Plaintiff further alleges that, on the night of April 5, 2022, he began experiencing psychological symptoms after being deprived of medication. Dkt. No. 10, ¶¶ 34–35. Plaintiff alleges that correction officers entered the cell, handcuffed him, pushed him to the ground, placed knees on his back, punched him, kicked him, pulled down his pants and underwear, grabbed his genitals and buttocks, spread his buttocks, and inserted a finger into his rectum. *Id.*, ¶¶ 36–45. He alleges that his prosthetic leg was damaged, that he was placed on a gurney and slammed into a wall, and that he received stitches at Bellevue Hospital. *Id.*, ¶¶ 48–54.

Plaintiff asserts a *Monell* claim against the City. He alleges that Rikers has a long history of overcrowding, mismanagement, inadequate staffing, inadequate medical care, excessive force, and unsafe infrastructure, and that the City maintained policies, practices, or customs pursuant to which Plaintiff was subjected to an unlawful body-cavity search, excessive force, medication deprivation, and deprivation of the ability to charge his prosthetic leg. Dkt. No. 10, ¶¶ 56–65. Plaintiff also asserts state-law claims for violation of the New York State Constitution and tort law, negligence, sexual battery, and damage to personal property. *Id.*, ¶¶ 66–82.

The facts relevant to Plaintiff's compliance with New York's municipal-suit prerequisites are undisputed. Plaintiff filed a notice of claim dated June 7, 2022 concerning the April 5, 2022 incident at EMTC. Dkt. No. 38, ¶ 12. The New York City Office of the Comptroller acknowledged receipt of Plaintiff's claim by letter dated June 17, 2022. *Id.*, ¶ 13. Plaintiff admits that his attorney was notified of four scheduled § 50-h hearings: (1) November 29, 2022; (2) February 17, 2023; (3) May 18, 2023; and (4) June 29, 2023. Dkt. No. 43-1, ¶¶ 14–17. He also admits that he "never appeared for any 50-h hearing." *Id.*, ¶ 18.

Plaintiff commenced this action on February 21, 2024. Dkt. No. 1. He filed his amended complaint on February 29, 2024. Dkt. No. 10. Defendants answered the amended complaint on May 20, 2024. Dkt. No. 16. Their Second Affirmative Defense states: "To the extent that the Complaint alleges any claims arising under New York State law, such claims may be barred in whole or in part, for failure to comply with New York General Municipal Law §§ 50-(e), *et. seq.*" Dkt. No. 16, ¶ 84.

## II. LEGAL STANDARD

Rule 56(a) provides that a party may move for summary judgment by "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought,"

and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Summary judgment therefore turns on whether the record presents "a sufficient disagreement to require submission to a jury" or is instead "so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But if the nonmoving party bears the burden of proof at trial, the movant need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* Rather, the moving party may discharge its burden by pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has carried its burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. Instead, it must point to evidence from which a reasonable jury could return a verdict in its favor. *Anderson*, 477 U.S. at 248. In assessing whether that showing has been made, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus.*, 475 U.S. at 587.

## III. DISCUSSION

### A. Plaintiff's *Monell* Claim Is Dismissed for Want of Evidence

Plaintiff's only federal claim is a § 1983 municipal-liability claim against the City. Dkt. No. 10, ¶¶ 60–65. Although the amended complaint names John Doe correction officers, those officers have never been identified or served. The only defendant that has been identified and served is the City.

The facts pleaded and testified to by Plaintiff are horrible and inexcusable. But the City cannot be held liable under § 1983 solely because it employed the correction officers who were allegedly involved in Plaintiff's detention and alleged assault. A municipality is liable under § 1983 only when the plaintiff proves that the challenged constitutional deprivation was caused by a municipal policy, custom, or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Municipal liability may not rest on *respondeat superior*. *Id.* at 691; *see also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 34–37 (2010). The plaintiff must identify a specific municipal policy or custom and then show a direct causal link between that policy or custom and the alleged deprivation of federal rights. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). As the Second Circuit has put it, "To prevail, a plaintiff must identify the existence of a municipal policy or practice that caused the alleged constitutional violation" and "must also demonstrate a sufficient causal relationship between the violation and the municipal policy or practice." *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016). Proof of a single incident by non-policymaking employees is generally insufficient to establish a municipal policy or custom. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Plaintiff has not met his burden. In the face of a motion for summary judgment, the question is whether Plaintiff has *adduced evidence* from which a reasonable jury could find that a City policy, custom, or practice caused the alleged violations. He has not.

To the extent Plaintiff asserts that Rikers maintains unconstitutional conditions of confinement, his claim is governed by the Fourteenth Amendment, because Plaintiff was a pretrial detainee. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("[C]laims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."). At the summary judgment stage, Plaintiff must support his *Monell* theory with admissible evidence that his injuries resulted from an unconstitutional custom or policy of the City. *See* Fed. R. Civ. P. 56(c); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."). He has not done so.

Plaintiff's opposition to the motion relies largely on the allegations of his complaint, on his deposition testimony, and on generalized assertions that Rikers has long suffered from unconstitutional conditions. *See* Dkt. No. 43 at 7–8. His testimony, if credited, supports his claim that he was mistreated and that some of said mistreatment might well rise to the level of a constitutional violation. But he offers no evidence that the specific instances of allegedly unconstitutional mistreatment he cites – being subjected to a body cavity search without cause, being forced to endure unsanitary conditions, being subjected to excessive force, being deprived of his medication for six days, and being unable to charge his prosthetic leg – was the product of any City *policy*.

To establish that the things that happened to him were the result of City policy, Plaintiff principally invokes *Nunez v. City of New York*, No. 11-cv-5845, the long-running class action pending before Chief Judge Swain concerning use of force and violence in New York City jails.

He states that, in 2011, "the deplorable conditions at Rikers came to the attention of the Federal Courts," that "a monitor was appointed to assess Defendant's remedial actions," and that "In recent times this monitor has highlighted many of the conditions detailed in this very Complaint." Dkt. No. 43 at 2. He also cites public reporting and asserts that Rikers is "woefully mismanaged," "unrelentingly violent," plagued by "rampant absenteeism of correction officers," and marked by "what amounts to a policy of understaffing." *Id.* Later, in his *Monell* argument, Plaintiff cites *Nunez* by docket caption for the proposition that Rikers is "notoriously understaffed, with insufficiently trained and supervised Correction Officers," and he asserts that "'Deliberate indifference' has been the 'custom' at Rikers, ultimately resulting in federal control of the facility and the appointment of a 'remediation manager.'" *Id.* at 7. He then says that, "Consistent with the findings in *Nunez*," he was forced to occupy cells covered in feces and urine, was beaten and sexually assaulted, was denied critical medication, and had his prosthetic leg damaged. *Id.*

The Court is well aware of the *Nunez* litigation and does not minimize the gravity of the findings made in that case. But Plaintiff does not put any of the *Nunez* record before the Court. He does not attach the *Nunez* consent judgment, any contempt findings, any monitor report, any remediation-manager order, any Nunez discovery, or any testimony from a City policymaker. The declaration submitted with his opposition incorporates the City's exhibits and attaches excerpts only from Plaintiff's own deposition testimony. It does not include any evidentiary material from Nunez. *See* Dkt. No. 43-2, ¶¶ 3–4.

Defendants point out that Plaintiff took no *Monell* discovery in this case, Dkt. No. 40 at 5–6, and Plaintiff does not controvert that point. That omission turns out to be fatal at the summary judgment stage *See Henry v. City of New York*, 2021 WL 1648029, at *6 (S.D.N.Y. Apr. 27, 2021) (holding that City of New York was entitled to summary judgment dismissing plaintiff's *Monell*

claim when he failed to "produce[] any evidence of a policy, custom, or deliberate indifference by the City" and failed to "produce any evidence of a failure to train, supervise, investigate, or discipline officers for unconstitutional behavior"); *Walker v. Raja*, 2020 WL 606788, at *11 (E.D.N.Y. Feb. 7, 2020) (granting summary judgment dismissal of plaintiff's *Monell* claim when "Plaintiff offer[ed] no additional factual averments or evidence" in support). Even assuming that the Court can take judicial notice of the existence of public filings in *Nunez*, *see, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006), the Court is simply not required to search the *Nunez* docket and construct Plaintiff's *Monell* theory for him – especially in a counseled case. *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002); *see also Praileau v. New York*, 2017 WL 6033738, at *8 (N.D.N.Y. Nov. 8, 2017) ("The Court is not required to search the record, much less search other cases from this Court and other courts, in order to attempt to identify the facts and documents to which plaintiff makes vague reference."). It was Plaintiff's burden to identify evidence showing that a City policy, custom, or practice caused the injuries alleged here. *See* Fed. R. Civ. P. 56(c)(1), (c)(3).

The record on this motion contains no *Monell* evidence whatsoever tying the conditions at Rikers – whether those conditions are described in *Nunez*, in public reporting, or in other lawsuits brought by Rikers detainees – to the particular deprivations he allegedly suffered in this case. The declaration submitted with Plaintiff's opposition does not attach DOC policies or evidence about DOC routine practices relating to intake, body-cavity searches, medical access, medication distribution, unsanitary intake-cell conditions, including overflowing toilets or human waste on cell floors, the use and maintenance of prisoner prosthetic devices, disability accommodations, use of force, or damage to detainees' property, including prosthetic devices. Plaintiff attaches no training materials, no staffing records for the intake unit, no use-of-force data. He does not offer

any evidence about any repeated failures to provide inmates with medication during the intake process (or at any time). He certainly does not offer any evidence about policies or general practices relating to disability accommodations or the use by inmates of electronic prosthetic devices – an unusual condition from which he suffers but that is hardly run-of-the-mill, even at Rikers.

The record, viewed in Plaintiff's favor, would permit a jury to credit his testimony that he was subjected to terrible conditions during intake and mistreated by correction officers. The Court assumes for purposes of this motion that Plaintiff could establish an underlying constitutional violation on the part of said unidentified officers. And there may well be evidence somewhere out there that could support a *Monell* claim concerning conditions at Rikers, the intake process, use-of-force practices, medical-care failures, or disability-accommodation failures. But, again, Plaintiff has not put that evidence into this record. It is not the Court's job to find it.

Plaintiff's evidence is limited to his own account of what happened to him and generalized assertions that Rikers is dangerous and dysfunctional. This supports an argument that Plaintiff suffered mistreatment. It does not establish that the City itself caused that mistreatment within the meaning of *Monell*. Generalized assertions that Rikers has serious systemic problems do not, without more, establish that a municipal policy or custom caused the particular injuries alleged in this case. *See Milhouse v. City of New York*, 2025 WL 3643694, at 11 (S.D.N.Y. Nov. 26, 2025), *report and recommendation adopted*, 2025 WL 3642399 (S.D.N.Y. Dec. 16, 2025) (rejecting plaintiff's perfunctory citation to the litigation in *Nunez v. N.Y.C. Dep't of Corr.*, 758 F. Supp. 3d 190 (S.D.N.Y. 2024), and "conclusory assertions that Rikers is a bad place").

Even assuming that the alleged intake-cell conditions were sufficiently serious under *Darnell*, and assuming that unidentified correction officers who were on duty during those six days

violated Plaintiff's constitutional rights as alleged, Plaintiff's claim against the *City* still fails absent evidence that a municipal policy, custom, or practice was the "moving force" behind what the correction officers did or failed to do. *See Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (requiring evidence that the challenged municipal action was the moving force behind the alleged constitutional violation).

To the extent Plaintiff tries to satisfy *Monell*'s municipal policy requirement by arguing that the City failed to train or supervise correction officers, his allegations are far from sufficient. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A failure-to-train theory requires evidence that the failure "amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Here, Plaintiff identifies no specific training deficiency, supervisory deficiency, policymaker decision, or City policy that caused the alleged body-cavity search, use of force, medication deprivation, failure to accommodate his prosthetic device, or property damage. His conclusory assertion that the City failed to train or supervise correction officers adequately is not enough to supply the required causal connection between any municipal policy or custom and Plaintiff's injuries. *See Mitchell*, 841 F.3d at 80. Plaintiff's failure to take any discovery about training practices is fatal to his ability to pursue a failure-to-train theory at the summary judgment stage.

At the summary judgment stage, "the nonmoving party" must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Because Plaintiff has failed to offer or identify any

such evidence, the City is entitled to summary judgment dismissing the *Monell* claim. Defendants' motion for summary judgment dismissing the first cause of action is GRANTED.

### B. Plaintiff's State-Law Claims Are Barred by His Failure to Comply with General Municipal Law § 50-h

All the rest of Plaintiff's claims arise under state law. His second cause of action is styled as a claim for violations of the New York State Constitution and unidentified aspects of tort law. Dkt. No. 10, ¶¶ 66–71. The third cause of action alleges negligence. *Id.*, ¶¶ 72–74. The fourth cause of action alleges sexual battery. *Id.*, ¶¶ 75–79. The fifth cause of action alleges damage to personal property. *Id.*, ¶¶ 80–82.

New York law requires a plaintiff asserting tort claims against a municipality to comply with the notice-of-claim requirements of General Municipal Law §§ 50-e and 50-i. Section 50-h gives the municipality the right to examine the claimant after a notice of claim is filed. It provides that, "Where a demand for examination has been served," "no action shall be commenced" against the municipality "unless the claimant has duly complied with such demand for examination." N.Y. Gen. Mun. Law § 50-h(5).

Plaintiff's second cause of action, which alleges a violation of the New York State Constitution, is also subject to the General Municipal Law. As pleaded, the state constitutional claim is a state constitutional tort claim. The amended complaint seeks monetary damages for alleged violations of the New York Constitution arising from the same conduct that underlies Plaintiff's federal and common-law claims: the alleged body-cavity search, use of force, deprivation of medication, denial of access to a prosthetic-leg charger, and damage to Plaintiff's prosthetic leg. Dkt. No. 10, ¶¶ 66–71. The prayer for relief seeks damages, costs, and attorney's fees; it does not seek systemic injunctive or declaratory relief directed at reforming Rikers. *Id.* at 11. The claim is therefore not a public-interest claim exempt from the General Municipal Law.

but a claim for damages based on alleged personal injuries caused by the tortious actions of municipal actors. *Atkins v. County of Orange*, 251 F.Supp.2d 1225, 1235 (S.D.N.Y.2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries.").

The New York Court of Appeals has held that General Municipal Law § 50-i applies to state constitutional tort claims against municipalities. In *423 South Salina Street, Inc. v. City of Syracuse*, 68 N.Y.2d 474, 479, 489 n.5 (1986), *cert. denied*, 481 U.S. 1008 (1987), the New York Court of Appeals held that the plaintiff's action was "barred by plaintiff's failure to serve a notice of claim as required by General Municipal Law § 50-i," and that the same failure "likewise barred any claim based upon violation of the New York State Constitution." The Court of Appeals also rejected the public-interest exception where the relief sought was limited to enforcement of the plaintiff's private rights rather than vindication of the rights of a similarly situated class. *Id.* at 493–94; *see also G.D.S. ex rel. Slade v. N. N.-E. N. Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 281 (E.D.N.Y. 2012) (concluding that a damages claim under the New York Constitution was a "state constitutional tort claim" and that the plaintiff's failure to appear for a § 50-h examination was fatal to that claim). Accordingly, Plaintiff's state constitutional claim, like his negligence, sexual battery, and property-damage claims, is barred if Plaintiff failed to comply with § 50-h.[1]

The rule is straightforward. A plaintiff must submit to a § 50-h examination before bringing a non-federal tort claim against a municipality when the municipality has duly demanded such an examination. "Compliance with a demand for a General Municipal Law § 50-h

---

[1] In any event, Plaintiff's state constitutional claim would fail for the additional reason that a separate implied damages remedy under the New York Constitution is unavailable where alternative remedies adequately protect the interests at stake. *See Brown v. State*, 89 N.Y.2d 172, 192 (1996); *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83–84 (2001). Plaintiff had alternative remedial avenues for the same alleged conduct, including § 1983 and traditional tort claims. A separate implied state constitutional damages remedy is therefore unnecessary.

examination is a condition precedent to the commencement of an action against a municipal defendant, and the failure to so comply warrants dismissal of the action." *Hymowitz v. City of New York*, 996 N.Y.S.2d 337, 338–39 (2d Dep't 2014). Likewise, "a plaintiff who has not complied with General Municipal Law § 50-h (1) is precluded from maintaining an action against a municipality." *McDaniel v. City of Buffalo*, 737 N.Y.S.2d 904, 904 (4th Dep't 2002). Although noncompliance may be excused in exceptional circumstances, such as "extreme physical or psychological incapacity," *MB v. Islip Sch. Dist.*, 2015 WL 3756875, at *14 (E.D.N.Y. June 16, 2015), Plaintiff identifies no such circumstance here.

The undisputed record establishes noncompliance. Plaintiff filed a notice of claim dated June 7, 2022. Dkt. No. 38, ¶ 12. The Comptroller acknowledged receipt of that claim by letter dated June 17, 2022. *Id.*, ¶ 13. Plaintiff admits that his counsel was notified of four scheduled § 50-h hearings: (1) November 29, 2022; (2) February 17, 2023; (3) May 18, 2023; and (4) June 29, 2023. Dkt. No. 43-1, ¶¶ 14–17. Plaintiff further admits that he "never appeared for any 50-h hearing." *Id.*, ¶ 18.

Plaintiff does not dispute that his attorney received notice of the scheduled § 50-h hearings. Nor does he argue that the City's § 50-h demand was improperly served.[2] Instead, Plaintiff argues that Defendants should not be permitted to rely on § 50-h because the defense was not raised earlier, because the deposition Plaintiff gave during this lawsuit Defendants the information they would have obtained at a § 50-h hearing, and because Defendants' General Municipal Law affirmative defense lacked sufficient specificity. Dkt. No. 43 at 9–10.

[2] The record contains the Comptroller's rescheduling letters and Plaintiff's admissions that counsel was notified of the scheduled § 50-h hearings. It does not appear to contain a separate affidavit of service for the initial § 50-h demand. But Plaintiff does not oppose dismissal on lack-of-service grounds; he argues waiver, lack of specificity, and cure by later deposition. He thus concedes that he was properly served with the demand.

Similar arguments have been tried before. They failed then and they fail now.

*First,* Defendants affirmatively pleaded failure to comply with the General Municipal Law as an affirmative defense. Their answer to Plaintiff's amended complaint states that, "To the extent that the Complaint alleges any claims arising under New York State law, such claims may be barred in whole or in part, for failure to comply with New York General Municipal Law §§ 50-(e), *et. seq.*" Dkt. No. 16, ¶ 84. This defense was sufficient to put Plaintiff on notice that Defendants intended to challenge compliance with the statutory prerequisites governing state-law claims against the City.

*Second,* Plaintiff's deposition taken in this lawsuit cannot be deemed an adequate substitute for his failure to comply with § 50-h. The statute makes compliance with a duly demanded § 50-h examination a condition precedent to commencing an action against the municipality. N.Y. Gen. Mun. Law § 50-h(5) ("Where a demand for examination has been served as provided in subdivision two of this section no action shall be commenced against the city, county, town, village, fire district or school district against which the claim is made unless the claimant has duly complied with such demand for examination, which compliance shall be in addition to the requirements of section fifty-e of this chapter."). A deposition taken after the action is filed is not the statutory examination that the City demanded before suit. *See Kennedy v. Arias*, 2017 WL 2895901, at *13 (S.D.N.Y. July 5, 2017) ("[P]laintiff's failure to attend a 50-h Hearing—*no matter the reason*—is a complete bar to his state law claims against the City."). Accepting Plaintiff's position would collapse the statutory pre-suit examination requirement into ordinary federal discovery, contrary to the text and purpose of § 50-h.

*Third,* Plaintiff has not shown any exceptional circumstance excusing his repeated failure to appear. This is not a case in which a claimant died before the hearing, was physically or

psychologically incapable of appearing, or was prevented by circumstances outside his control from complying. *Compare Hymowitz*, 996 N.Y.S.2d at 339, *with McDaniel*, 737 N.Y.S.2d at 904. Plaintiff simply admits that he did not appear for any of the four scheduled hearings.

Recent amendments to CPLR § 208-a and General Municipal Law § 50-i(6) do not salvage Plaintiff's claims. These amendments concern the time to commence certain actions for injuries suffered while in correctional custody. They do not amend § 50-h, and they do not excuse a claimant's failure to appear for a duly demanded pre-suit examination.

Furthermore, the Court does not rely on General Municipal Law § 50-i as a basis for dismissal. Section 50-h independently requires dismissal because Plaintiff admittedly failed to appear for any of the four scheduled examinations. Accordingly, whatever effect the recent amendments may have on the limitations period for covered claims, they do not change the fact that Plaintiff failed to satisfy a condition precedent to bringing his state-law claims against the City.

Plaintiff's state-law claims are therefore DISMISSED for failure to comply with General Municipal Law § 50-h.

### C. The Claims Against the John Doe Defendants Are Dismissed

The complaint also names John Doe 1–5, described as correction officers employed at Rikers Island at the time of the events at issue. Dkt. No. 10, ¶ 13. Plaintiff has never identified or served those defendants. Discovery has closed. Defendants moved to dismiss the John Doe defendants, and Plaintiff did not respond to that argument. *See* Dkt. No. 43, Pl.'s Mem. L. Opp'n Defs.' Mot. for Summ. J. at 1–15. This failure to respond is a sufficient basis to deem the argument abandoned. *See Brunero v. Vukasinovic*, 2024 WL 4345731, at *7 (S.D.N.Y. Sept. 30, 2024) ("Generally, a party's failure to respond to an argument effectively concedes that argument."). But

dismissal is warranted for a more fundamental reason. Plaintiff cannot proceed indefinitely against unidentified and unserved defendants after discovery has closed.

A plaintiff may use "John Doe" placeholders at the outset of litigation when the identities of the relevant defendants are unknown. But "John Doe" pleadings are temporary; they do not eliminate the requirement that the plaintiff eventually identify and serve the defendants. As Judge Posner explained in *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 789 (7th Cir. 1995), "eventually the plaintiff must discover the names of the defendants in order to serve summonses on them and thus establish the court's personal jurisdiction, without which the suit must be dismissed." That is precisely the posture here. Plaintiff had the opportunity to conduct discovery, discovery is now closed, and Plaintiff still has not identified or served any John Doe defendant. *See Da Mata v. City of New York*, 2023 WL 112449, at *15 (S.D.N.Y. Jan. 5, 2023) (dismissing Doe defendants where plaintiffs failed to identify them after discovery); *Keesh v. Artuz*, 2008 WL 3166654, at *2 (S.D.N.Y. Aug. 6, 2008), *aff'd sub nom. Allah v. Michael*, 506 F. App'x 49 (2d Cir. 2012) (same).

Moreover, Section 1983 claims arising in New York are subject to a three-year limitations period. *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107–08 (2d Cir. 2023). The events at issue occurred in April 2022, so the limitations period for any § 1983 claim against the unidentified correction officers has expired. Replacing a John Doe defendant with a named defendant after the limitations period has expired ordinarily constitutes a change in party and does not relate back merely because the plaintiff lacked knowledge of the defendant's identity. *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151–52 (2d Cir. 1999). The Second Circuit has repeatedly made that point. In *Barrow v. Wethersfield Police Department*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996), the court held that relation back was unavailable because "the new

names were added not to correct a mistake but to correct a lack of knowledge." And in *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013), the court explained that "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."

Nor does Rule 15(c)(1)(A) or CPLR § 1024 save the claims against the John Doe defendants. Rule 15(c)(1)(A) permits relation back when "the law that provides the applicable statute of limitations allows relation back," and *Hogan* recognized that New York law may provide a more forgiving relation-back rule for certain *nunc pro tunc* John Doe substitutions. 738 F.3d at 518–19. But Hogan also makes clear that, "To take advantage of § 1024, a party must meet two requirements." *Id.* at 519. First, the party must "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Id.* Second, the pleading must describe the John Doe defendant "in such form as will fairly apprise the party that [he] is the intended defendant." *Id.* Plaintiff satisfies neither requirement. He has not invoked CPLR § 1024, has not shown that he exercised due diligence before the limitations period expired to identify the Doe officers, and has not shown that the amended complaint described any particular Doe officer in a manner that would fairly apprise that officer that he was the intended defendant.

*Ceara v. Deacon*, 916 F.3d 208 (2d Cir. 2019), does not alter the analysis. *Ceara* distinguished a true John Doe placeholder case from a misnomer case. There, the plaintiff had identified the officer as "C.O. Deagan," gave additional identifying details, and later corrected the name to "Officer Joseph Deacon." *Id.* at 210–11, 214–15. *Ceara* reaffirmed that *Barrow v. Wethersfield Police Department*, 66 F.3d 466 (2d Cir. 1995) remains good law and that an amendment replacing a true John Doe placeholder with a newly identified defendant is made "not to correct a mistake but to correct a lack of knowledge." *Id.* at 212–13. This case is a true John

Doe case, not a misnomer case. Plaintiff did not name or misname any officer; he simply failed to identify the Doe defendants before the limitations period expired.

Plaintiff has not identified or served the John Doe defendants; he did not oppose Defendants' request to dismiss them; the limitations period has expired; and he offers no basis for relation back under either Rule 15(c)(1)(C) or Rule 15(c)(1)(A). Accordingly, the John Doe defendants are DISMISSED.

## Conclusion

Defendants' motion for summary judgment is GRANTED. Plaintiff's § 1983 *Monell* claim against the City is DISMISSED because Plaintiff has not adduced evidence from which a reasonable jury could find that a municipal policy, custom, or practice caused a violation of his federal rights. Plaintiff's state-law claims are DISMISSED because Plaintiff failed to comply with General Municipal Law § 50-h. The recent amendments to CPLR § 208-a and General Municipal Law § 50-i(6) do not alter that conclusion. The John Doe defendants are DISMISSED because they were never identified or served, and amendment would be futile.

The Clerk of Court is respectfully directed to terminate the motion at Docket Number 37, enter judgment for Defendants, and close the case.

This constitutes the Opinion and Order of the Court. It is a written decision.

Dated: July 8, 2026
New York, New York

U.S.D.J.

BY ECF TO ALL COUNSEL